UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-CR-85-KKC-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| BRAXTON STUMP, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, *see* DE 155, considers a reported violation of supervised release conditions by Defendant, Braxton Stump. On August 25, 2014, Defendant, after entering a guilty plea (DE 60), received an 18-month sentence for conspiring to distribute oxycodone in violation of 21 U.S.C. § 846. DE 123 (Judgment). After his February 2016 release, Stump began a 3-year supervised release term. *Id.* at 3. Stump admitted using oxycodone and marijuana at a November 10, 2016, final revocation hearing. DE 140 (Minute Entry). Chief Judge Caldwell added a six-weekend jail sentence to Defendant's conditions and released him to continue the supervision term. *Id.*

On July 18, 2017, USPO Glenn Collins reported Stump's arrest in Winchester, Kentucky, and the Commonwealth's then-charge of second degree wanton endangerment—the subject matter of these revocation proceedings.[1] *See* DE 147 (Initial Appearance Minutes). The District Court postponed the ultimate violation determination pending resolution of the parallel state

---

[1] Defendant's supervised release conditions forbid, *inter alia*, commission of federal, state, or

1

matters. DE 149. In state court, Stump eventually pleaded guilty to second degree disorderly conduct and was sentenced to time served. *Commonwealth v. Stump*, Case No. 17-M-695 (Clark Dist. Ct., November 20, 2017). Judge Caldwell then set this matter for a December 14, 2017, final hearing. DE 154 (Order).

The undersigned, conducting the final hearing, covered the reported charge and afforded Stump all rights due under Rule 32.1 and 18 U.S.C. § 3583.[2] The July 18 Report alleges that on July 1, 2017, Mr. Stump was arrested and charged with second degree wanton endangerment based on the following: (1) a five year old child was found near Massey Ball Park in Winchester by an off-duty Winchester Police Department (WPD) detective; (2) the child asked the detective to get in his truck; (3) the child told law enforcement where she lived; (4) Stump, when WPD arrived at his home, appeared very disoriented; (5) and Defendant could not recall his own (or his[3] kids') biographical information or his children's locations in the home. DE 123 (Judgment); DE 140 (Minute Entry Order).

The hearing, the Report, and the state court record, failed to establish Defendant's violation of the terms and conditions of his supervised release, as described in the violation report and as pursued by the United States at the hearing under Rule 32.1 and § 3583.[4] Per the

---

local crimes.

[2] The Court, on referral from the District Judge, conducted a full hearing. The Court offered the parties the opportunity to present any proof and make any argument concerning the proper disposition of the matter. The Court also expressly informed the parties of their appeal rights and Defendant of his allocution right.

[3] The Court will refer to all the children residing with Mr. Stump as "his kids," both for convenience, and also because his girlfriend indicated that *all* her children consider Stump their father—without regard to biological ties. Stump does have a child of his own, out of state, which contributed to the confusion.

[4] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3). The United

2

record, Defendant was sleeping around 8:30 AM as his girlfriend's minor daughter wandered approximately 60 feet from their home. Uncontroverted testimony indicated that: (1) the child was previously warned not to leave the home, (2) her prior rural living situation may have led to confusion, for the child, (3) Defendant was awake doing home repairs until the early morning hours on the date in question, (4) the child's mother was unexpectedly called in to work that morning, and when she left, all children were asleep, and (5) Defendant contemporaneously tested negative for drug use.

The Court recognizes that Defendant eventually pleaded guilty to a state law violation, disorderly conduct (2nd). However, Defendant only received notice of and an initial appearance on the precipitating violation report, which alleged wanton endangerment, not disorderly conduct. Prior to proof presentation, the United States confirmed its intent to prove Defendant committed second degree wanton endangerment under Kentucky law (KRS 508.070). The Court finds the proof inadequate. The government's proof as to a wanton *mens rea* was weak,[5] and certainly fell short of preponderantly establishing that Stump wantonly created a substantial danger of physical injury to another. The proof was that, after a long night of home repair, Stump was asleep. He and Ms. Bartley (the mother of the kids) thought she would be staying home for the day. Unexpectedly, she had to leave for work. The kids were asleep at the time. The 5-year-old later wandered outside and across the street (about 60 feet from home). Stump, awoken by Winchester police, was disoriented. However, he tested negative for drugs at the time (and soon

---

States confirmed its intent to prove wanton endangerment (2nd), which is the alleged crime referenced by the Report.

[5] State and USPO testing produced negative results, and the state court, after reviewing body cam footage, found no intoxication.

3

after by USPO), and he had explanations for his lack of details with police. Stump must be a more vigilant caregiver, but this is not wanton endangerment (2nd) under Kentucky law.

The Court has carefully weighed the nature and circumstances of the original offense, the past violation, as well as Defendant's particular history and characteristics. Defendant is gainfully employed, has worked toward a suitable parental role, and has made honest efforts to reform his life. Though Stump's recent mistake is concerning, the Court perceives no intentional or wanton disregard for imposed conditions. The Court also commends Defendant for the lifestyle changes he has made since the July 25, 2017, initial appearance. DE 147 (Minute Entry Order). The USPO reports that Stump successfully complied with all the terms of his interim release and, outside the reported violations, has been a compliant supervisee.

All told, considering the entire record, the Court finds that the hearing-discussed condition modifications—requiring Stump to participate in ongoing parenting and mental health treatment/counseling as deemed proper by USPO—are appropriate. Stump's state guilty plea could signal a technical violation. However, the relevant violation was not the (and has not been an) official violation report subject, nor has Stump received Rule 32.1 mandated process for a disorderly conduct charge. Ultimately, the circumstances surrounding Defendant's history of compliance and documented efforts at reform militate against any further revocation proceedings.[6]

---

[6] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Because the Court perceives no intentional or wanton disregard of Court conditions in Defendant's conduct, it also seems that additional

For all the reasons stated, and based full record, the Court **RECOMMENDS**:

1. A finding of no violation, as alleged;

2. That, per § 3583(e)(2), Defendant's supervision term continue on the all conditions and for the duration previously imposed, with the following modifications:

    a. Stump **SHALL** participate in ongoing parenting and mental health treatment/counseling as deemed appropriate by USPO; and

    b. The previously imposed interim supervisory terms (DE 147) restricting Defendant's access and role regarding the minor children be lifted. Instead, Stump shall, as part of federal supervision, comply with the state court and Cabinet's limits and restrictions on parenting.

The Court carefully took the views of the United States and defense into account in reaching this result. The Court is hopeful that the modification in Stump's supervised release conditions lead him to continuing better decisions and greater care regarding his parental role. The Court intends Stump to complete any USPO required treatment program or counseling in the balance of the supervision term.

Defendant's right of allocution under Rule 32.1 persists, as reflected in the record. Any waiver should comport with the Court's standard waiver form, which the Court provided to defense counsel. Absent waiver, the District Judge will set the matter for a hearing to include allocution.

---

proceedings regarding the technical violation would, absent additional proof, likely waste court resources. The disorderly conviction fits very poorly with the facts at issue. That state Class B

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 18th day of December, 2017.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge

---

misdemeanor involves *public* conduct leading to a particular risk. KRS 525.060.